O'CONNER v. JOHN L. SCHWARTZ BREWING CO. et al.

(Supreme Court, Equity Term, Orleans County. June 6, 1912.)

INTOXICATING LIQUORS (§ 103*)—TRANSFER OF RIGHT TO DO BUSINESS AS SECURITY—RIGHTS OF PLEDGEE.

Where a liquor licensee transferred to a brewing company his right to do business as security for the repayment by him of license and bonding fees advanced and for fixtures, the prompt payment of bills for beer supplied, and the exclusive sale by him of the beer of the company, and he paid the license and bonding fees himself, and the brewing company failed to supply proper beer so as to make it necessary for him to purchase beer elsewhere to supply his customers, the company could not, without any demand for a return of the fixtures, file an abandonment of the license and thereby prevent him from continuing his business, though it paid the license and bonding fees in full at the beginning of the license term.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 108–112; Dec. Dig. § 103.*]

Action by David O'Conner against John L. Schwartz Brewing Company and C. Royce as County Treasurer of Orleans County. Judgment for plaintiff.

Eugene J. Dwyer (Dean F. Curries, of counsel), for plaintiff.

Shire & Jellinek (Vernon Cole, of counsel), for John L. Schwartz Brewing Co.

POOLEY, J. The primary purpose sought by the execution and delivery of the power of attorney and agreement of the character executed by plaintiff to the Brewing Company is the security for the repay-

ment of the license and bonding fees advanced, and for certain fixtures furnished, the prompt payment of bills for beer and ale supplied, and the exclusive sale by plaintiff of the beer and ale of the defendant Brewing Company.

As these licenses are issued annually, the formalities have to be complied with annually. Plaintiff, in September, 1910, renewed his license, paid the premium on the bond and the greater part of the license fees at once, and about two weeks afterwards paid the balance. He paid his bills, and at the time of the abandonment of the license owed nothing to the Brewing Company. So there were no other obligations existing except the return of the fixtures, and the exclusive sale of the defendant Brewing Company's ale and beer.

No demand was made for the return of the fixtures, which were only in part used by the plaintiff, and no notice to him of any intent on the part of the Brewing Company to abandon the license.

It is uncontradicted that some of the beer furnished by the Brewing Company was sour or otherwise inferior, and was refused by plaintiff's customers, and that by reason thereof plaintiff was obliged to and did purchase beer elsewhere to supply his customers.

Two days before the expiration of the license year, the Brewing Company filed an abandonment of the license, and thus prevented the plaintiff from obtaining a renewal, without which he was unable to continue his business, notwithstanding that the license and bond fees had been paid in full by the plaintiff at the beginning of the license term, and that the Brewing Company had never advanced any money to the plaintiff, and that plaintiff had promptly paid his bills.

It is proper that the Brewing Company should require security for money advanced, but here nothing of the kind existed, and it should not be in the power of any one to deprive another of valuable property rights and appropriate them to his own use under any other circumstances than that of an absolute right to do so.

The claim of the defendant of the right to thus appropriate the property of the plaintiff is unconscionable and should not be permitted under the guise of a violated agreement, when it appears that the Brewing Company had also violated the implied agreement to furnish beer and ale of salable quality.

Under the law restricting the number of places where these products may be sold, the right to so sell has become of much greater value than the annual license fee, and it seems to me that the purpose of the defendant was not pointed so much toward the insistence upon the sale of its beer, as the appropriation of plaintiff's valuable right to do business in this restricted territory. It is apparent that there is rivalry in this business, and the brewers are entitled to maintain their rights and cannot be criticised for their zeal, so long as they are within the law and do not infringe upon the rights of others.

There is considerable conflict in the evidence as to what occurred at the time of the execution of the papers in question. Plaintiff claims that he was told that the papers were only a matter of form in the routine of procuring a bond and securing his license, and that he had no idea that he was transferring his right to do business into the hands

of the Brewing Company in such a way that it could arbitrarily deprive him of his means of livelihood without any notice whatever. The Brewing Company claims that the papers were required in order to secure it for moneys advanced and to insist on the exclusive sale of its products, and that the contents of the papers were read and explained to plaintiff at the time he was called upon to sign them. Of course, the plaintiff is bound by the terms of a written instrument which he signs, whether he reads it or not. It is his business to read it and understand it, and he should not take the word of any one, unless it be his legal adviser, as to its contents. But here we are dealing with an uneducated man, unfamiliar with legal phraseology, who is taken to the office of the attorney acting for the Brewing Company and presented with legal documents in printed form of considerable extent, and the import of them is stated to have been explained to him. Without intending to reflect in any way upon the attorney, it may well be questioned whether or not the explanation was sufficient so that plaintiff understood the effect of the instruments he was asked to sign. He insists that he did not, and that the impression conveyed and left on his mind was that they were mere formalities in procuring his bond and license.

Whether he did understand their effect or not, and even assuming that he did, there is sufficient in the evidence to warrant the undoing of what was done in depriving him of his right to trade.

The evidence is undisputed that no complaint had been made during the time plaintiff has occupied the premises, as to his manner of conducting the place. He had leased it from third parties, and the Brewing Company was in no way obligated for the rent. From anything that appears, the plaintiff was financially responsible, and paid his way without assistance from the Brewing Company or any one else, and he was prepared to pay for a renewal of his license. There was little, if any, consideration for this extraordinary instrument transferring all his rights to do business.

In my judgment, the equities are with the plaintiff, and he should have judgment for the relief sought.