In re FARLEY, State Excise Com'r.

(Supreme Court, Appellate Division, Second Department. December 30, 1912.)

1. INTOXICATING LIQUORS (§ 45*)—LICENSES—STATUTES—"ABANDONED."

The word "abandoned," as used in Laws 1910, c. 494, providing that no liquor tax certificates should issue for traffic in liquor to exceed one for each 750 in population, but that such prohibition should not apply to premises in which such traffic in liquor was lawfully carried on within one year before the passage of the act, "provided such traffic was not abandoned during the said period," refers to an actual cessation of traffic in liquors.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 47; Dec. Dig. § 45.*

For other definitions, see Words and Phrases, vol. 1, pp. 4–13; vol. 8, p. 7559.]

2. INTOXICATING LIQUORS (§ 104*)—RIGHT OF ABANDONMENT AND TRANSFER.

The right to abandonment and transfer of a liquor business from one place to another in the same municipality, under Laws 1910, c. 494, is in the holder and owner of the liquor tax certificate alone, whether in possession of the premises or not, and not in the owner of the premises.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 109; Dec. Dig. § 104.*]

3. INTOXICATING LIQUORS (§ 103*)—TAX CERTIFICATES—ASSIGNMENTS.

A liquor certificate may be transferred, and the assignee thereof has the right to serve notice of abandonment and transfer, and to apply for a new certificate at the place designated by him, as provided by Laws 1910, c. 494.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 108–112; Dec. Dig. § 103.*]

Appeal from Special Term, Westchester County.

Petition by William W. Farley, as State Commissioner of Excise, to cancel liquor tax certificate No. 12,978, issued to John Bales. From an order canceling such certificate, and judgment thereon, Bales and another appeal. Affirmed.

See, also, 137 N. Y. Supp. 1119.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

F. X. Donoghue, of Yonkers, for appellant John Bales.

Arthur Rowland, of Yonkers, for appellant Ringler Company.

Frederick E. Grant, of New York City (Morton C. Fitch, of New York City, on the brief), for respondent.

BURR, J. On September 3, 1909, a certificate was issued to one William Simmons for traffic in liquor upon premises on Dock street, in the village of Hastings, for the excise year ending September 30, 1910. This certificate was transferred on June 30, 1910, to John Bales, who had obtained a lease of said premises for five years from July 1, 1910, and who thereupon entered into and has since continued in the possession thereof. At the time of the transfer of such certificate to him he executed and delivered to the Manilla Anchor Brewing Company an instrument under seal, and reciting a valuable consideration therefor, containing these words:

"I * * * have sold, assigned, and transferred, and hereby do sell, assign, and transfer, unto the party of the second part the said liquor tax certificate [describing the one above referred to], and all the right, power, and option which I have or which I shall hereafter have under the said tax certificate, and the provisions of said statute [the Liquor Tax Law] to surrender or cancel said tax certificate, *or to have the said tax certificate transferred to any other premises than those above mentioned,* or to sell, assign, or transfer the said tax certificate; * * * and I do hereby make, constitute, and appoint the party of the second part my true and lawful attorney, irrevocable, with full power of substitution, for me and in my name, place, and stead to sell, assign, transfer, and set over unto itself, or unto any person or persons, firm, or corporation, the said liquor tax certificate, *and to have the said tax certificate transferred to any premises other than those above mentioned,* and to surrender and cancel the said tax certificate, and to make, sign, execute, and acknowledge any and all bills of sale, assignments, surrenders, transfers, or applications in writing, under seal or otherwise, necessary or proper for the sale, assignment, transfer, surrender, or cancellation of such tax certificate, hereby ratifying and confirming all that my said attorney or its substitute may lawfully do in the premises. * * * And I hereby agree to and with said party of the second part and its assigns that I will not assign, transfer, or surrender the said tax certificate to any other person than the party of the second part, and that *I will not apply for the transfer of said tax certificate* and all unexpired coupons thereon."

On August 17, 1910, the Manilla Anchor Brewing Company took possession of said certificate, and on the same day, as the attorney in fact of John Bales, verified a petition for the transfer of said certificate to one Alfred Pionier, "to enable the said Alfred Pionier to carry on, upon said premises, the business for which said tax certificate was issued for the balance of the term thereof." This petition was addressed to the special deputy commissioner of excise of Westchester county, and filed with him on September 15, 1910. Attached to this petition is Pionier's application, verified August 26, 1910, to obtain a liquor tax certificate for a term beginning September 15, 1910, and to expire at the close of the excise year, September 30, 1910, authorizing him to traffic in liquors on the Dock street premises. On September 29, 1910, Pionier filed a notice stating that such traffic in liquors was abandoned at the premises named in such certificate, and describing other premises in the village of Hastings where it was intended

to carry on such traffic, to wit, at Longue Vue, between Old and New Broadway. On the same day said certificate was transferred to the premises thus designated, and thereafter a new certificate was issued for traffic in liquor at this place for the balance of the excise year, which certificate was subsequently transferred to and is held by the Longue Vue Hotel Company, which company, under said certificate and a renewal thereof, ever since has been and now is trafficking in liquors at the place named. In September, 1910, the certificate was issued which is attacked in these proceedings, and which is known as No. 12,978. This certificate was issued to John Bales, the same person who had previously acquired and transferred the certificate above referred to for the year ending September 30, 1910, which new certificate was for the excise year to expire September 30, 1911, and which certificate referred to the Dock street premises as the place of such traffic. This certificate was revoked by an order of the Special Term of the Supreme Court, upon the ground that the Dock street premises could not any longer be used for traffic in liquors, and therefore Bales was not entitled to receive and hold the same. From such order, and from a judgment for costs entered thereon, this appeal is taken.

[1] The ground upon which such revocation was based did not exist prior to June 15, 1910, upon which date an amendment was made to the Liquor Tax Law (Consolidated Laws, c. 34 [Laws of 1909, c. 39]). By an act which on that day became operative (Laws of 1910, c. 494) a new subdivision was added to section 8 of the Liquor Tax Law, which, among other things, provided as follows:

"No liquor tax certificate shall hereafter be issued for traffic in liquors, under the provisions of subdivision one of this section, for any premises in any town, village, borough or city, unless or until the ratio of population therein, to the number of certificates issued under the provisions of said subdivision one shall be greater than seven hundred and fifty to one, and then only pursuant to the provisions of this subdivision."

It was intended thereby to limit the number of places at which such traffic could be carried on. In many, if not most, of the cities and villages of this state the ratio of population to certificates was much less than that. In the village of Hastings, where this controversy arose, the ratio was about 268 to 1. Apparently with a view of modifying the drastic effects of this law, the Legislature added this provision to the portion of the section above quoted:

"But this prohibition shall not apply to any premises in which such traffic in liquors was lawfully carried on at some time within one year immediately preceding the passage of this act, *provided such traffic was not abandoned thereat during the said period.*"

There are other exceptions to the application of this prohibition, which it is not necessary now to consider, as they have no bearing upon this controversy. The same section contains this further clause:

"Provided, however, that at any time during the unexpired term of any liquor tax certificate issued for traffic in liquors under the provisions of subdivision one of this section in any premises in which such traffic may lawfully be carried on, a notice stating that such traffic in liquors is abandoned at the premises named in such certificate may be filed with the county treasurer or special deputy commissioner of excise of the county or borough

in which the certificated premises are located, which notice shall also particularly describe some other premises in which it is intended to carry on such traffic, which premises shall be situated in the same city, borough, village or town as that in which the abandoned premises are located."

In all cases except in the case of hotels:

"Such notice shall be in writing and executed and acknowledged by the certificate holder and by any person to whom such certificate may have been transferred or assigned as collateral security for moneys loaned or any other obligation incurred."

Except in the case of hotels:

"After the filing of such notice * * * such prohibition shall not apply to the premises described in such notice as the premises in which it is intended to carry on such traffic, provided that an application for a certificate to carry on such traffic in liquors thereat shall be made in due form to the proper officer, within sixty days from the filing of such notice, and provided further that such traffic is continuously thereafter carried on at said premises," etc.

The premises at Dock street came within the exception to the prohibition first above referred to. Some confusion arises from the words "provided such traffic was not abandoned thereat during said period"; that is, within one year prior to the passage of the act, because the same word "abandoned" is subsequently used with reference to the transfer of the right to traffic in liquors to another place. It seems quite clear, however, that the word "abandoned," as used in this clause of the act, refers to an actual cessation of traffic in liquors, since during the period specified there was no such thing known to the law as abandonment in connection with transfer.

[2] The vital question, therefore, in this case, is: To whom does the right of abandonment and transfer to other premises belong? To the person in possession of the premises, either as owner or lessee, or to the owner and holder of the liquor tax certificate? It seems to us clear that it is the latter.

The section above referred to provides that, in cases similar to those here considered, notice of abandonment and transfer shall be in writing, and executed and acknowledged by the "certificate holder and by any person to whom such certificate may have been transferred or assigned." There is a significant omission of the words "and the owner or owners of the certificated premises," which appear in the portion of the act relating to hotel licenses. Section 2 of the act of 1910 amends paragraph 3 of section 15 of the Liquor Tax Law with regard to the particulars to be stated in connection with obtaining a liquor tax certificate. It provides that:

"The applicant or applicants shall also state whether or not there has been filed with the certificate-issuing officer a notice of abandonment pursuant to the provisions of subdivision nine of section eight of this chapter [the new subdivision added as aforesaid] by virtue of which traffic in liquors under the provisions of subdivision one of said section eight may lawfully be carried on at the premises described in the application statement."

The applicant or applicants for a liquor tax certificate are not the owners of the premises where the business is to be carried on, but every person to become liable for a tax upon the business of trafficking in liquors. Liquor Tax Law, supra, §§ 8, 15.

The learned counsel for the appellants contends that, inasmuch as the assignee of John Bales and its successors in interest were never in possession of the premises at Dock street, they were not in position to abandon the same for the liquor traffic. The difficulty with this contention is that it is not the premises which are abandoned, but the business of trafficking in liquors thereon. The intention of the legislation may be considered in determining the scope and true construction of the act. The thing aimed at was to reduce gradually the number of places at which traffic in liquors could be carried on, until the ratio of the number of such places to inhabitants should not exceed the number specified. That would not be readily effected by putting it in the power of the property owner only to abandon the right thus to use the premises situated in one place and transfer the right to another. No property owner would be in a position nor inclined to do that, unless he was also the owner of the property to which the transfer was to be made. On the other hand, the holder of the liquor tax certificate, by abandoning his business in one portion of the city or village, and transferring his right to traffic in liquors to some other place therein where such traffic had been previously carried on, might thereby reduce the total number of places which could be used for such purpose. If the right belongs to the property owner, and not to the certificate holder, then the trafficker in liquors is completely at the mercy of his landlord, for he cannot abandon the premises formerly occupied by him and transfer his business to another place. It might have the effect of preventing him from carrying on business at all, except on terms as to rent and other matters of that character agreeable to the landlord. On the other hand, if the certificate holder gives up the right to abandon liquors in the place formerly occupied by him, although the owner thereof may not be able to use the same for the conduct of the liquor business, there is no restraint upon his using the same for any other lawful business.

[3] The only other point raised by the appellants is as to the validity of the transfer of the certificate, and the right of the assignee thereof to serve notice of abandonment and transfer, and apply for a new certificate at the place designated by him. This right was provided for in the act, and especially included in the instrument of assignment. The case of O'Conner v. John L. Schwartz Brewing Co. (Sup.) 135 N. Y. Supp. 794, seems not in point; for in that case the rights of the assignee of the certificate had expired.

We think the order and judgment should be affirmed, with costs and disbursements. All concur.