(93 Misc. Rep. 681)

BRUNNER et al. v. DIOGENES BREWING CO. et al.

(Supreme Court, Special Term, Kings County. February, 1916.)

INTOXICATING LIQUORS ⬥104—LICENSE—ABANDONMENT—STATUTORY PROVISIONS.

Under Liquor Tax Law (Consol. Laws, c. 34) § 8, subd. 9, added by Laws 1910, c. 494, and amended by Laws 1911, c. 298, forbidding the issuance of liquor tax certificates until the population exceeds 750 to

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

every certificate, but providing that the traffic in liquors might be abandoned from the premises where the certificate was issued to other premises, described in the notice of abandonment, and that in case of a hotel with less than 50 rooms the notice shall be in writing, signed by the certificate holder, the owner of the premises, and any person holding the certificate as collateral, where a tenant of a hotel containing 32 rooms covenants that any license to traffic in liquors on the premises shall immediately become appurtenant to the real property, and waives all privilege to sell or assign a certificate of abandonment, and covenants that neither he nor the person to whom the license may be issued will, during the term of the lease, execute to any person other than the landlord any power of attorney or other instrument in writing affecting such license, the privilege of abandoning the traffic from the leased premises to other premises remains in the landlord, and he may maintain an action in equity to set aside any instrument executed by the tenant affecting such writing, and to have a certificate issued to himself authorizing the traffic on such premises.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 109; Dec. Dig. ⟨⟩104.]

Action by William Brunner and another against the Diogenes Brewing Company and others. Judgment ordered for plaintiffs.

Albert O. Briggs, of Rockaway Beach, for plaintiffs.

Marcus E. Joffe, of New York City (Isaac Loewenthal, of New York City, of counsel), for defendant Diogenes Brewing Co.

W. Brainsby, of New York City, for defendant Fooshkill.

Jacob H. Denenholz, of Jamaica, for defendant Berger.

JAYCOX, J. The plaintiffs are the owners of a building at Rockaway Beach, in the county and borough of Queens, on the westerly side of Ward avenue, about 175 feet north of the Boulevard, and have been the owners of said building, together with the furniture and fixtures therein, since about the 1st day of January, 1903. This building formerly faced the Boulevard, and was used for a hotel in that situation until about 1909, when it was turned around and faced upon Ward avenue. The plaintiffs have leased said building for hotel purposes during all the time of their ownership. The plaintiffs own the land upon which said building was situated prior to its change from the Boulevard to Ward avenue, and also own the land upon which it is now situated. Various tenants of the plaintiff had borrowed money from and been indebted to the defendant Diogenes Brewing Company, and the indebtedness to said brewing company had been secured by chattel mortgages and assignments of the liquor tax certificate, which had been issued to these tenants. Under the Liquor Tax Law as it existed prior to June 15, 1910 (Consol. Laws, c. 34; Laws of 1909, c. 39), there was no restriction upon the number of certificates which might be issued in any city, village, or town. By an act which on that day became operative (Laws of 1910, c. 494) a new subdivision was added to section 8 of the Liquor Tax Law, to be known as subdivision 9, which, among other things, provided as follows:

"No liquor tax certificate shall hereafter be issued for traffic in liquors, under the provisions of subdivision 1 of this section, for any premises in any town, village, borough or city, unless or until the ratio of population therein to the number of certificates issued under the provisions of said subdivision

1 shall be greater than 750 to 1, and then only pursuant to the provisions of this subdivision."

It was intended to limit the number of places at which such traffic could be carried on. In many, if not most, of the cities and villages of this state the ratio of population to certificates was much less than that. In the borough of Queens at the present time the ratio of population to certificates is 297 to 1. Under the act last above mentioned it was provided that the traffic in liquors might be abandoned from the premises where the certificate was issued to other premises described in the notice of abandonment. It was also provided in said act in relation to such abandonment of the right to traffic in liquors:

"In the case of a hotel such notice shall be in writing and executed and acknowledged by the certificate holder and the owner or owners of the certificated premises and by any person to whom such certificate may have been transferred or assigned as collateral security for moneys loaned or any other obligation incurred. * * *"

The statute remained in that condition until June 9, 1911, when it was amended by chapter 298 of the Laws of 1911, taking effect on that date. The portion thereof in relation to notice of abandonment, so far as involved in this action, was amended as follows:

"In the case of a hotel, other than a hotel containing less than fifty such bedrooms in cities of the first class, such notice shall be in writing and executed and acknowledged by the certificate holder and the owner or owners of the certificated premises and by any person to whom such certificate may have been transferred or assigned as collateral security for moneys loaned or any other obligation incurred; and in all other cases such notice shall be in writing and executed and acknowledged by the certificate holder or by his duly authorized attorney and by any person to whom such certificate may have been transferred or assigned as collateral security for moneys loaned or any other obligation incurred."

The premises in question are situated in a city of the first class, and the building in question contains 32 bedrooms. The plaintiffs claim that in April, 1911, they executed to the defendant Ignatz Berger a lease dated the 3d day of April, 1911, leasing the premises to said Ignatz Berger. Annexed to said lease, immediately below the signatures of the parties, is the following covenant and waiver:

"And the said tenant does hereby covenant for and in behalf of himself, his heirs, executors, administrators, and assigns, that each and every license which may be hereafter issued authorizing the person, firm, or corporation to whom such license may be issued to traffic in liquor upon the premises hereby leased shall immediately upon its issuance become and be appurtenant to the real property hereby leased, and shall be inseparable therefrom during its continuance and during the term of this lease. And the said tenant, in behalf of himself and in behalf of each and every person, firm, or corporation to whom during the continuance of this lease may be hereafter issued a license to traffic in liquor upon the premises hereby leased does hereby and as a condition of the granting of this lease expressly waive each, all, and every privilege and right to sell, assign, surrender, transfer, or file a certificate of abandonment under the provisions of said Liquor Tax Law, excepting the selling of the liquor in any way attached to said license by the provisions of said Liquor Tax Law heretofore or hereafter enacted and now or hereafter in force during the term of this lease, and does further covenant that neither he nor the person to whom such license may be issued will, during the term of this lease, execute or deliver to any person, firm, or corporation other

158 N.Y.S.—39

than the lessor hereinbefore named any power of attorney or chattel mortgage or other instrument in writing concerning, affecting, or incumbering in any manner such license."

Then follow an inventory of the personal property in the hotel, and then an acknowledgment, dated on the 22d day of May, 1913, taken before W. N. Brunner, Jr., a son of the plaintiff William Brunner. The contention of the defendant Diogenes Brewing Company is that this lease was either executed at about the date of its acknowledgment, or that the covenant and waiver above quoted were added to it at or about that date. It does seem to show remarkable foresight upon the part of the owners of this property to have inserted in a lease a provision which exactly meets an amendment made to the Liquor Tax Law which became a law more than two months after the date of the lease in question. At the time of this lease the liquor tax certificate could only be abandoned to other premises with the consent of the owner of the premises to which it was issued; but here, apparently, the landlord was able to foresee the condition which afterward arose, and introduce into his lease a covenant made desirable by a law taking effect two months thereafter. The lease above mentioned was for three years.

On the 16th of March, 1914, the plaintiffs executed another lease to the defendant Ignatz Berger for a further period of three years, commencing at the expiration of the lease above mentioned. This lease contains the same covenant and waiver as the prior lease, and the lease itself, covenant, waiver, and acknowledgment are in the same order as the prior lease. This lease was acknowledged on the 17th of March, 1914. On the 9th day of June, 1911, the defendant Berger executed a chattel mortgage to secure the sum of $1,000 to the defendant Diogenes Brewing Company. On the 8th day of March, 1913, the defendant Ignatz Berger executed to the defendant Diogenes Brewing Company a paper designated as a power of attorney, option, and agreement, by which the liquor tax certificate about to be issued to the defendant Berger is assigned to the defendant Diogenes Brewing Company, and the defendant Diogenes Brewing Company is appointed the attorney in fact of the defendant Berger, and authorized to execute a notice stating that the traffic in liquors is abandoned at the premises for which certificate is to be issued, and authorizing the defendant Diogenes Brewing Company to purchase said certificate from the defendant Berger upon the terms therein mentioned. A similar paper was executed on the 1st of April, 1914, and upon the 1st of May, 1915.

The defendant Berger continued to occupy the premises in question and traffic in liquors therein until on or about the 12th day of August, 1915, when the defendant Diogenes Brewing Company seized the liquor tax certificate which had been issued to said Berger on or about the 1st day of May, 1915, and, under and pursuant to a power of attorney issued to it by said Berger, executed a notice of abandonment of the traffic in liquors at the premises above described on Ward avenue, and stated that it was the intention of the said Berger to continue the traffic in liquors at premises situate at the northeast corner of New-

port avenue and Seminole street, Neponsit, in the borough of Queens. This notice is dated on the 12th day of August, 1915. The premises at which the traffic in liquors is thereafter to be conducted is a vacant lot, and no application was ever made for a certificate permitting the traffic in liquors at said premises. No certificate was ever issued, and the traffic in liquors was never thereafter conducted at said premises. Thereafter, and on the 20th day of August, 1915, the defendant Diogenes Brewing Company, under the power of attorney above stated, executed a second notice of abandonment, by which it gave notice that the traffic in liquors was abandoned from the same premises described in the prior notice, to wit, west side of Ward avenue, 180 feet north of Boulevard, Rockaway Beach, in the borough of Queens, to premises at No. 115 Rockaway road, Jamaica. At this latter place the defendant Fooshkill has obtained a certificate and is now trafficking in liquors. The first certificate issued to him was issued upon the surrender of the certificate which had been issued to the defendant Ignatz Berger.

The plaintiffs bring this action to set aside these notices of abandonment, and in effect to have it adjudged that the premises owned by the plaintiffs are entitled to have a certificate issued to them authorizing the traffic in liquors. The first question presented is as to whether there has been any legal abandonment of the right to traffic in liquors from the premises of these plaintiffs to the premises for which a certificate has now been issued. I apprehend that it is undisputed that the right to abandon the traffic in liquors in one place and resume the traffic in another is purely statutory and that the requirements of the statute must be strictly carried out. It will be observed that the statute provides for the issuance of a certificate to premises and not to persons. It will be observed that the premises may acquire certain rights under the statute and that such rights may be lost. It has been decided that the right to surrender, as between the owner of the premises and the tenant holding a certificate, is vested in the tenant, except in those cases where the consent of the landlord is required. Matter of Farley (Bales Certificate) 154 App. Div. 282, 138 N. Y. Supp. 1050. This personal right to abandon is somewhat in derogation of the general scheme of the statute, which as I suggested before, vests the right in the premises, and the tenant cannot avail himself of it unless he does so in accordance with the statute. The statute provides for a notice of abandonment and then says:

"But in any case such notice shall be null and void unless within sixty days from the filing thereof such traffic in liquors shall be lawfully carried on at the premises described in such notice as the premises in which it is intended to carry on such traffic, and continued thereat for a period of not less than sixty days, and the filing of a notice that becomes null and void shall not be deemed an abandonment of the traffic at the premises described in such liquor tax certificate. After the filing of such notice as aforesaid, the prohibition herein contained shall not apply to the premises described in such notice as the premises in which it is intended to carry on such traffic, provided that an application for a certificate to carry on such traffic in liquors shall be made in due form to the proper officer within sixty days from the filing of such notice, and provided further that such traffic is continuously thereafter carried on at said premises for a period not less than sixty days. Except in a case where such notice becomes null and void as aforesaid, no liquor tax certificate for traffic in liquors under the provisions of subdivision

1 of this section shall thereafter be issued for, and it shall be unlawful to so traffic in liquors in the premises described in such notice as the premises in which the traffic in liquors has been abandoned. * * *" Laws 1911, c. 298, § 1

Under the first notice of abandonment the Diogenes Brewing Company or the defendant Fooshkill did absolutely nothing toward complying with the law. Assuming that the right to abandon was vested in Berger and was legally executed by the defendant Diogenes Brewing Company, the notice of abandonment therefore first filed at the end of 60 days became null and void, and the right to traffic in liquors then reverted to the premises of the plaintiffs from which such traffic had been abandoned. The right to traffic in liquors in plaintiffs' premises was absolutely taken away by the first notice of abandonment and did not revert to such premises until the end of 60 days. Therefore, when the Diogenes Brewing Company filed the second notice of abandonment as attorney for the defendant Berger, no right to traffic in liquors existed in the plaintiffs' premises and none could be abandoned therefrom. I think the purpose of the statute is clear. It is intended to protect a tenant who has the right to abandon and permits him in good faith to abandon the traffic to other premises, and to continue such traffic in the new premises. It, however, was not intended to place the tenant in a position of having a right to traffic in liquors which was personal to him, and which he could carry around in his pocket and abandon as many times as he saw fit. The purpose of the statute was to restrict to some extent the sale of these certificates and the right to traffic in liquors thereunder.

I am therefore of the opinion that the attempted abandonment by means of the second notice of abandonment was void. The right to surrender the certificate and obtain the rebate thereon should not be confused with the right to traffic in liquors. The right to surrender the certificate in this case remained in the person to whom it had been assigned, notwithstanding the fact that he might not be entitled to traffic in liquors thereunder. The certificate could be surrendered and the rebate obtained notwithstanding the fact that the surrenderer could not traffic in liquors thereunder. The right to traffic in liquors could only be taken from the plaintiffs' premises by complying with the statute, and the statute says in effect that the plaintiffs' premises could only be deprived of the right to traffic in liquors by the filing of a notice of abandonment, provided that an application for a certificate to carry on such traffic in liquors shall be made in due form within 60 days to the proper officer. The right to traffic in liquors in the new premises is conditional upon this, and if the right to traffic in the new premises is lost by failure to apply for a certificate and traffic in liquors for the period provided by the statute, that right immediately reverts to the old premises. The right to traffic in liquors does not always follow the issuance of a certificate. A certificate may exist under which there is no corresponding right to traffic in liquors. People ex rel. Hope v. Masterman, 156 App. Div. 450, 141 N. Y. Supp. 1039; Id., 209 N. Y. 182, 102 N. E. 553. It is necessary, in addition, to have premises in which such traffic may be lawfully carried on. A transfer

or abandonment of the right to traffic in liquors cannot be made merely because of possession of the certificate. It is necessary that the transferor have premises from which and to which the right to traffic in liquors may be abandoned. McMahon v. Henkel, 91 Misc. Rep. 85, 153 N. Y. Supp. 915. A notice of abandonment being a bar to the issuance of a certificate (Brown v. Jones, 89 Misc. Rep. 538, 152 N. Y. Supp. 571), then, after the filing of the first notice of abandonment, no right to traffic in liquors remained in the abandoned premises. No certificate could be issued to those premises, and no further right of abandonment existed as to those premises. A prior notice of abandonment existing, the deputy excise commissioner was not authorized to issue a certificate under the second notice of abandonment. The papers were irregular upon their face, or he had in his office proof as to the falsity of some of the statements. Matter of Farley v. Miller, 216 N. Y. 449, 111 N. E. 66.

My attention has been called to no good reason for holding that the tenant may not, by virtue of a covenant in his lease, surrender to the landlord the right to abandon the traffic in liquors in the premises which he leases. He cannot obtain the certificate unless the landlord leases the premises to him and consents that such certificate be issued to him. Therefore it seems to me the tenant might well make an agreement by which he surrenders to his landlord the privilege of abandoning the traffic in liquors from the leased premises to any other premises. The right to traffic in liquors is a valuable franchise, and prior to the execution of the lease is vested in the landlord, and the landlord, therefore, may very properly restrict the tenant in the exercise of this privilege so that the right to abandon will remain in the landlord. In this case I think the plaintiffs have, by the covenant and waiver contained in the lease, retained this privilege. This being so, the power of attorney, agreement, and option executed by the defendant Berger had nothing to lay hold of. The privilege of abandonment was not in the tenant, Berger, and Berger could therefore execute no instrument, either option or power of attorney, which would affect this right, which remained in the landlord. The plaintiffs' right to maintain an action in equity seems to me clear. People ex rel. Hope v. Masterman, supra; O'Conner v. John L. Schwartz Brew. Co., 135 N. Y. Supp. 794; Matter of Farley, supra; McMahon v. Henkel, supra.

Plaintiffs are entitled to the relief prayed for in the complaint, together with the costs of this action. Ordered accordingly.