CITIZENS BREWING CORPORATION, Respondent, *v.* JOHN LIGHTHALL and PENROSE & MCENIRY, Appellants, Impleaded with GEORGE E. GREEN, State Commissioner of Excise, and JOHN P. MCNAB, Special Deputy Commissioner of Excise for the County of Albany, Defendants.

Third Department, March 7, 1917.

Appeal — effect of staying injunction pending appeal — intoxicating liquors — assignment of liquor tax certificate as security for debt — effect of such assignment on right to conduct sale of liquor on premises — abandonment of premises by assignor and assignee — right of new tenant to new certificate.

Where the court, having granted a temporary injunction directing the delivery of a liquor tax certificate to the clerk of the court pending an action, stays the operation of the injunction order until the hearing of an appeal from the order to the Appellate Division, it is equivalent to a transfer of the original motion to the latter court.

Where the person holding a liquor tax certificate authorizing him to sell liquors on certain premises assigned the certificate to a brewing company solely as security for a debt and also surrendered possession of the premises to the landlord, so that they stand without a tenant, the assignee of the certificate acquires no right to sell liquor on the premises, nor does it acquire any right to surrender the certificate itself as the representative of the assignor, nor can it abandon the sale of liquors on the premises within the provisions of sections 25 and 8 of the Liquor Tax Law.

Moreover, section 25 of the Liquor Tax Law makes the privilege of changing the location where liquors may be sold under a certificate personal to the holder of the certificate, or the purchaser of such certificate, with the consent of an assignee who has taken the certificate as collateral security only.

Hence, where a certificate has been assigned as collateral security only, so that the assignee has no right to sell liquors on the premises for which the certificate was issued, the removal of the certificate from the premises by the assignee put an end to the right of any person to continue the business of selling liquor on the premises without a new certificate.

It follows, that a new tenant of the premises, having complied with all the requirements of the statute, is entitled to a new certificate authorizing him to conduct the sale of liquors on said premises and he cannot be deprived of that right because the assignee of the prior certificate by surrendering the same has attempted to abandon the premises for the sale of liquor.

KELLOGG, P. J., and COCHRANE, J., dissented, with opinion.

APPEAL by the defendants, John Lighthall and another, from an order of the Supreme Court, made at the Albany Special Term and entered in the office of the clerk of the county of Albany on the 11th day of December, 1916, restraining the defendant Lighthall from trafficking in liquors and commanding the appellants to deliver certain liquor tax certificates to the clerk of the court to be held and impounded by said clerk.

*Walter H. Wertime,* for defendants Lighthall and Penrose & McEniry, appellants.

*J. Sheldon Frost,* for the defendants Green and McNab.

*Howard Hendrickson* [*Henry A. Rubino* of counsel], for the respondent.

WOODWARD, J.:

The order from which this appeal is taken grants the plaintiff's motion for an injunction and directs the interested defendants to deliver the liquor tax certificate to the clerk of

the court, to be held during the pendency of the action, on condition that the plaintiff shall furnish a bond in the sum of $750 to indemnify the defendants in the event of the failure of the action, and then stays the operation of the order until the hearing of the appeal to this court, provided the defendants appeal immediately. The practical effect of this order appears to be that there is no existing injunction; the defendants are in the same position they would be in if there was no restraining order, and this court is, in effect, called upon to determine a question which primarily belongs to the court at Special Term. To issue a preliminary injunction and then suspend its operation until this court can hear an appeal is equivalent to this court hearing the original motion, and the case thus comes to us freed from much of the presumption which attaches to an adjudication in the regular way. The learned court handed down an opinion (98 Misc. Rep. 79), holding that the injunction should issue, but makes no mention of the provision for a stay of the injunction, which would seem to indicate that the court, in spite of its opinion, was in doubt as to the conclusion reached; and we share in that doubt.

The respondent tells us that this litigation is founded upon the dictum of CULLEN, Ch. J., in the case of *People ex rel. Hope* v. *Masterman* (209 N. Y. 182), and then endeavors to convince this court that this great jurist was wrong in most of the essentials of that case, however right he may have been in the dictum. In the case cited it was held that when the papers on an application for a liquor tax certificate are regular and sufficient on their face the county treasurer is required to issue a certificate to the applicant, since his duties are only ministerial, and that, although a liquor tax certificate has been granted to one not having any lease or interest in the premises, the owner or tenant in possession is entitled, on application, to a new certificate. The Liquor Tax Law (Consol. Laws, chap. 34; Laws of 1909, chap. 39), it must be remembered, is a revenue measure; it does not undertake to adjust equities or to regulate the morals of the State. It provides, in section 15, certain statements which must be made upon an application for a liquor tax certificate, among them by subdivision 5 (as amd. by Laws of 1915, chap. 654) that the applicant "may lawfully

carry on such traffic in liquors upon such premises," and to do this he must, of course, have lawful possession of such premises at the time of making the application, or the right to such possession at the time the certificate goes into effect, for it is provided by section 19 (as amd. by Laws of 1911, chap. 407) that "before commencing or doing any business * * * the said liquor tax certificate shall be inclosed in a suitable wood or metal frame, having a clear glass face and a substantial wood or metal back, so that the whole of said certificate may be seen therein and shall *be posted up and at all times displayed in a conspicuous place in the room or bar* where the traffic in liquors for which the tax was paid is carried on," etc. Having thus provided the conditions on which the license is to issue, including the giving of a bond under section 16 (as amd. by Laws of 1916, chap. 416), section 17 (as amd. by Laws of 1913, chap. 168) provides that "when the provisions of sections fifteen and sixteen of this chapter have been complied with and the application provided for in section fifteen is found to be correct in form and does not show on the face thereof that the applicant is prohibited from trafficking in liquor under the subdivision of section eight under which he applies, *nor at the place where the traffic is to be carried on,* and the bond required by section sixteen is found to be correct as to its form and the sureties thereon are approved as sufficient * * *, then upon the payment of the taxes levied under section eight of this chapter the county treasurer of the county * * * shall, at least two days before the commencement of the period for which the tax is paid, * * * issue to the person making such application and filing such bond and paying such tax, a liquor tax certificate in the form provided for in this chapter," etc. It thus appears clearly that the certificate issuing officer is not vested with discretion; where the application is in form and substance correct, and does not show upon its face any reason within the statute for refusal, it is the duty of the officer to take the amount of the tax assessed and tendered, and to issue the certificate. (*People ex rel. Hope* v. *Masterman,* 209 N. Y. 182, 184, and authority there cited.) When the certificate has been issued to any individual it becomes his duty, before beginning business and at all times during the continuance of such business, to post the certificate and to keep

it properly displayed " in the room or bar where the traffic in liquors for which the tax was paid is carried on," and a violation of this provision subjects him to the payment of a fine and penalty, and, if he be the holder of said certificate, such certificate shall be forfeited. (Liquor Tax Law, § 36, as amd. by Laws of 1910, chap. 485; Id. § 43, as amd. by Laws of 1910, chap. 503; *Matter of Michell,* 41 App. Div. 271.)

In the case now before us a certificate was issued to one Ludwig Jagielo on the 30th day of September, 1916, authorizing him to carry on the business of selling liquors at No. 38½ Oneida street, Cohoes, for the period beginning October 1, 1916, and ending September 30, 1917. Jagielo executed and delivered to Conway Brothers Brewing and Malting Company, a corporation, a power of attorney and assignment of such liquor tax certificate, known in this case as No. 8239, and the said brewing company assigned its rights to the plaintiff in this action. Jagielo trafficked in liquors at the premises No. 38½ Oneida street from the first day of October to the thirty-first day of October at four o'clock in the afternoon, he being the tenant of McEniry Brothers, owners of such premises. On October thirty-first at four o'clock in the afternoon Jagielo delivered to the plaintiff in this action his certificate to traffic in liquors and surrendered possession of the premises to his landlord, so that with the close of the month of October the premises at 38½ Oneida street were without a tenant and without the right in any one to traffic in liquors at that point. A sale of liquor at 38½ Oneida street after the surrender of the certificate to the plaintiff would have been illegal and would have subjected the certificate to forfeiture. The assignment of the certificate was merely as security for an indebtedness and conveyed to the assignee no right to engage in the liquor business, so that the brewing company did not become a holder thereof authorized to sell liquors. (*Matter of Michell,* 41 App. Div. 271, 273; *Matter of Lyman* [*Texter Certificate*], 59 id. 217, 219.) The plaintiff, not having been authorized to sell liquors under the assigned certificate, acquired no right to surrender the certificate except as the representative of the assignor, and in case the assignor had abandoned liquor selling (*Matter of Michell, supra*), and, as it acquired no right to sell

liquors under such certificate, it could not abandon the sale of liquors at the premises in question within the meaning of section 25 of the Liquor Tax Law, as amended by chapter 407 of the Laws of 1911, and of subdivision 9 of section 8 of the Liquor Tax Law (added by Laws of 1910, chap. 494, as amd. by Laws of 1915, chap. 654). Section 25 provides that " if a person, having paid a tax and holding a liquor tax certificate, shall desire to transfer to and carry on such business for which the liquor tax certificate was issued in other premises than those designated in the original application, and in the tax certificate, but in the same city, borough or town, and in premises where such traffic is not prohibited by this chapter, upon the making and filing of a new application and bond in the form and as provided for in sections fifteen and sixteen of this chapter, and a consent in writing executed and acknowledged by any person to whom such certificate may have been transferred or assigned as collateral security for moneys loaned or any other obligation incurred, and the presentation of the tax certificate, the officer who issued the same. or his successor in office, shall write or stamp over his signature across the face of the certificate the words, 'The traffic in liquors permitted to be carried on under this certificate is hereby transferred from (here insert the description of the original locality) to (here insert the description of the new locality).' "

This is a privilege personal to the holder of the certificate with the consent of those who hold the certificate as collateral, but it does not give any rights to the assignee in the matter of changing the location; the privilege is personal to the person making the application, and the assignee merely holds the property rights in such certificate, subject to the conditions under which the privilege is granted, and the holder of such certificate may forfeit or waive his rights under such certificate. (*Matter of Lyman,* 160 N. Y. 96.) Subdivision 9 of section 8 of the Liquor Tax Law is merely a limitation of this power, and confers no other or different rights from those involved in section 25, which, as we have seen, is personal to the holder authorized by the certificate to traffic in liquors at a stated place upon complying with the conditions of the statute. In addition to the right of the holder to transfer

to a new location, as provided in section 25, it is provided in section 26 (as amd. by Laws of 1911, chap. 407) that the holder, or his duly authorized attorney, " may sell, assign and transfer such liquor tax certificate during the time for which it was granted to any person not forbidden to traffic in liquors under this chapter, nor under the subdivision of section eight under which such certificate was issued, who may thereupon carry on the business for which such liquor tax certificate was issued upon the premises described therein, if such traffic is not prohibited therein by this chapter, during the balance of the term of such tax certificate, with the same rights, and subject to the same liabilities as if such person were an original applicant for such certificate and the original owner thereof, upon the making and filing of a new application and bond by such purchaser in the form and as provided for by sections fifteen and sixteen of this chapter, and a consent in writing executed and acknowledged by any person to whom such certificate may have been transferred or assigned as collateral security for moneys loaned or any other obligation incurred," etc.   It is then provided that " if, however, the person to whom such liquor tax certificate was sold, assigned and transferred, shall not desire to traffic in liquors in the premises for which said liquor tax certificate was issued, but shall desire to transfer to and carry on such business for which the liquor tax certificate was issued in other premises than those designated in the original application and in the tax certificate, but in the same city, borough or town and in premises where such traffic is not prohibited by this chapter during the balance of the term of such tax certificate," he may do so under substantially the same terms and conditions as those imposed upon the original holder of the certificate under the provisions of section 25; but it is to be observed that the privilege is personal to the original holder and to the person who has purchased the certificate, with the right to carry on the business at the original locality, and has no reference to a mere assignment for the collateral security of a debt or other obligation, such as the assignment in the instant case.   The fact that the plaintiff, a manufacturing corporation, came in and took away the license from No. 38½ Oneida street did not give such corporation the rights which belonged to the holder of

the certificate under the provisions of sections 25 and 26 of the Liquor Tax Law (as amd. *supra*); the assignment was merely as a security for an indebtedness, and conveyed to the assignee no right to engage in the liquor business. (*Matter of Michell, supra.*) On the contrary, when the plaintiff possessed itself of the liquor tax certificate and removed it from No. 38½ Oneida street it put an end to the right of any one to continue the business of selling liquor in the premises without a new certificate. This was the situation on the morning of November 1, 1916, when the defendant, John Lighthall, who had in the meantime become the tenant of McEniry Brothers, made an application for a liquor tax certificate for the premises at 38½ Oneida street. It is true, as stated by the deputy commissioner of excise to the applicant, that there was a certificate outstanding for such premises, but the plaintiff had made such certificate inoperative for such premises by removing it from the room or bar, and the original holder had, by a surrender of possession of such premises, made it unlawful for the plaintiff to restore it to the premises; it could not do so without becoming a trespasser upon the person then in lawful possession of such premises, and the case is thus brought clearly within the principle involved in *People ex rel. Hope* v. *Masterman* (209 N. Y. 182). The plaintiff, a stranger to the ownership or possession of the premises, held a certificate which, in the hands of the original holder, while displayed on the premises, would permit him to traffic in liquors, but which when once removed was unavailable for such traffic, and when the owner or tenant in possession made a new application, answering properly all of the questions prescribed by section 15 of the law, as amended, among them the declaration that he might lawfully carry on such traffic in liquors upon such premises, the deputy commissioner of excise had no discretion in the premises; it became his duty to execute and deliver the certificate. When that certificate was properly framed and posted on the premises, as required by law, it afforded full authority to traffic in liquors upon the premises at 38½ Oneida street, and the attempted abandonment made by the plaintiff nearly two hours later could have no effect upon the rights which had thus become vested in the defendant John Lighthall. The plaintiff had no right to traffic in liquor upon the premises in

question at any time on the 1st day of November, 1916. It could not, therefore, abandon any such right to the prejudice of the rights of the owners or tenants of the premises.

The order appealed from should be reversed, with costs, and the motion for an injunction denied, with costs.

All concurred, LYON, J., in result, except KELLOGG, P. J., dissenting in opinion, in which COCHRANE, J., concurred.

KELLOGG, P. J. (dissenting):

The Liquor Tax Law creates certain property rights in a liquor tax certificate, and those rights are always subject to the provisions of that law. If we assume that the certificate is issued by a public official as a ministerial act, and that he must grant a certificate if the papers are regular, although a prior certificate exists as to the same premises, it must follow, where the quota of certificates in a city is full, that the second certificate is subject to all rights which the law gives to the first certificate and its holder. Recognizing that fact, the Commissioner of Excise, when a second certificate is issued for the same premises, notifies the applicant of the existence of the prior certificate. Such notice was given in this case. The holder of a certificate, upon complying with the law, has an absolute right to abandon the traffic at the place for which the certificate is issued and transfer it to another eligible place. (Liquor Tax Law, § 25.) The owner of a saloon property, by renting it and permitting the lessee to obtain a certificate in his own name, puts it in the power of the lessee to close the traffic of liquors at that place and transfer it to another place. (*Matter of Farley* [*Bales Certificate*], 154 App. Div. 282; affd., 208 N. Y. 595; *Matter of Farley* [*Vorndran Certificate*], 170 App. Div. 400; *Matter of Marshall* v. *Green*, 97 Misc. Rep. 492; affd. on opinion of SHEARN, J., 175 App. Div. 938; 161 N. Y. Supp. 1134.) The statute itself indicates clearly that the owner of the ordinary saloon premises has no voice in the matter whether or not the certificate shall be transferred from his premises to another place. It expressly provides that in the case of certain hotels the owner of the certificated premises, and the certificate holder, must execute the notice, and then provides that in all other cases the notice shall be executed by the

certificate holder and his assignee. (See, also, § 8, subd. **9,** added by Laws of 1910, chap. 494, as amd. by Laws of 1915, chap. 654.)

The rights of the landlords, McEniry Brothers, of the second certificate holder, Lighthall, and of Penrose & McEniry, the brewing company, Lighthall's assignee, are, therefore, subject to all the legal rights which accrued to the plaintiff as the owner of the former certificate. While it is true that the assignee of a certificate cannot engage in the liquor traffic without complying with the provisions of the law, nevertheless, upon complying with such provisions, he may continue the traffic (§ 26) or transfer it elsewhere (§ 25). The plaintiff held the certificate as security, and also had an irrevocable power of attorney from the holder authorizing him to sell or surrender the certificate or transfer it to other premises, the same as in *Matter of Farley* [*Bales Certificate*] (*supra*). On October thirty-first at four P. M. the certificate was delivered to the plaintiff for the purpose of having it transferred to other premises, and on the first day of November at eleven o'clock A. M. the plaintiff presented the certificate with the necessary papers to abandon the old place and transfer it to another place. In the meantime, on November first at nine-forty-five A. M. a certificate had been issued to Lighthall, and under the rules of the department in such a case the official refused to consent to the transfer without the consent of Lighthall. Clearly the first certificate was in force at the time Lighthall made his application, and his rights at all times were subject to the rights of the first certificate holder. The fact that liquor traffic stopped at the premises at four o'clock P. M. October thirty-first and the certificate was then removed for the purpose of transferring it to other premises did not invalidate the certificate or forfeit any rights of the certificate holder. Subdivision 9 of section 8 of the act provides that the notice of abandonment may be filed at any time during the unexpired term, but within sixty days thereafter a certificate must be obtained for the new place and traffic begun, and that while said notice remains in force no liquor tax certificate shall be issued for the place abandoned, and it shall be unlawful to traffic in liquors thereat unless a certificate shall be transferred to that place. In order to make

effectual a transfer the certificate must be removed from the old place and brought before the public official for his consent to the transfer. It cannot be, therefore, that the removal of the certificate from the first place renders it ineffectual, or deprives the owner of the right to transfer it, especially where the removal itself is made for the purpose of a transfer.

Undoubtedly the Lighthall certificate was applied for and issued as a scheme on the part of Lighthall, the plumber; McEniry Brothers, the landlords; Jagielo, the bartender, and Penrose & McEniry, the brewers, to deprive the plaintiff of the right to transfer its first certificate to other premises, but it cannot have that effect. It is manifest that while the liquor traffic continues at these premises under the Lighthall certificate, the plaintiff's certificate has no substantial value for the purpose of sale, or transfer elsewhere. And while the complaint is not a model, it sufficiently appears from it and from the affidavits that the defendants by a trick are trying to deprive the plaintiff of the value of its property and are interfering with its right to sell or transfer its certificate to other premises. A court of equity, therefore, has the right to grant the relief asked, and it is proper during the continuance of the action to stop the traffic, which is unauthorized so far as the plaintiff is concerned, and to impound the certificate, so that when the action is decided all questions under these certificates may end. If the plaintiff had filed a notice to abandon the traffic at this place and transfer it elsewhere before the Lighthall certificate was issued, it is clear that it could by certiorari compel the official to consent to the transfer. (*People ex rel. Young* v. *Shults,* 167 App. Div. 33.) But the Lighthall certificate having been issued before the notice was filed, the plaintiff should not be thrown out of a court of equity and be compelled to resort to that uncertain remedy. I favor an affirmance of the order.

COCHRANE, J., concurred.

Order reversed, with costs, and motion for injunction denied, with ten dollars costs.